# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

GEORGE W. WATTS, III,

        Plaintiff,

        v.                  Case No. 26-CV-463

JBS GREEN BAY, INC.,

        Defendant.

## DECISION AND ORDER

Currently pending before the court is George W. Watts III's Request to Proceed in District Court without Prepaying the Filing Fee. (ECF No. 2.)

"[E]very litigant has a legal responsibility to pay the filing and docketing fees to the extent feasible." *Longbehn v. United States*, 169 F.3d 1082, 1083 (7th Cir. 1999). Based upon the financial information contained in Watts' motion, the court concludes that he has the financial resources to pay a portion of the filing fee. Watts indicates he has a monthly income of $3,000 but expenses of only $2575.92. Therefore, based upon his affidavit, Watts has $424.08 every month that could be utilized to pay the costs of this action. *See Zaun v. Dobbin*, 628 F.2d 990, 993 (7th Cir. 1980); *Bryan v. Johnson*, 821 F.2d 455 (7th Cir. 1987); *Dotson v. Blood Ctr.*, 988 F. Supp. 1216, 1218 (E.D. Wis. 1998); *Longbehn*, 169 F.3d at 1083; *Bell v. Affinity Health Greenville*, 2011 U.S. Dist. LEXIS 72964 (E.D. Wis. July 6, 2011).

As to what partial amount the plaintiff should pay, even though he is not incarcerated, the Prison Litigation Reform Act ("PLRA") is nonetheless helpful to the court in guiding its determination. *See, e.g., Lane v. Pollard*, 2011 U.S. Dist. LEXIS 111024 (W.D. Wis. Sept. 26, 2011). Under the PLRA, an individual is presumed capable of paying up to 20% of his average monthly income or his assets towards the filing fee. 28 U.S.C. § 1915(b)(1). Thus, the court shall order Watts to pay a partial filing fee of $85. This represents 20% of the $424.08 Watts states he receives each month beyond that which is necessary to cover his expenses. The plaintiff shall pay the partial filing fee of $85 not later than April 30, 2026. **<u>Failure to pay the $85 partial filing fee by April 30, 2026, shall result in this matter being dismissed.</u>** Upon payment of the $85 filing fee, the requirement that the plaintiff pre-pay the remaining $320 shall be waived.

However, because the court is waiving the prepayment requirement for a portion of the filing fee, it must determine whether the complaint is legally sufficient to proceed. 28 U.S.C. § 1915.

## I.      Legal Standard

Congress sought to ensure that no citizen would be denied the opportunity to commence a civil action in any court of the United States solely due to poverty. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). However, Congress also recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive

2

lawsuits." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To balance these competing concerns, before the court can allow a plaintiff to proceed in forma pauperis it must determine that the case neither (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, nor (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Thus, although "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), a pro se complaint must meet these minimal standards before the court shall grant a plaintiff leave to proceed in forma pauperis.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton*, 504 U.S. at 31; *Neitzke*, 490 U.S. at 325. Although factual allegations must be weighed in favor of the plaintiff, that does not mean that the court is required to accept without question the truth of the plaintiff's allegations. *Denton*, 504 U.S. at 32. Thus, a court may dismiss a claim as frivolous if it is "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," "wholly incredible," or "based on an indisputably meritless legal theory." *Id.* at 32-33. A court may not dismiss a claim as frivolous simply because "the plaintiff's allegations are unlikely." *Id.*

A claim might not be frivolous or malicious but nonetheless fail to state a claim upon which relief may be granted and, therefore, be subject to dismissal. In determining whether a plaintiff has stated a claim, under 28 U.S.C. § 1915(e)(2)(B)(ii) the court applies the same well-established standards applicable to a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *DeWalt v. Carter*, 224 F.3d 607, 611 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the allegations in a complaint need not be detailed, a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, citation, and brackets omitted). The complaint must be sufficiently detailed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

If the complaint contains well-pleaded non-frivolous factual allegations, the court should assume the veracity of those allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

With the standards set forth in 28 U.S.C. § 1915(e)(2) in mind, the court turns to the allegations raised in the plaintiff's complaint, which the court accepts as true at this stage.

**II.     Analysis**

Watts brings this action against his former employer, JBS Green Bay, Inc. (ECF No. 1.) Watts alleges that he reported potential violations of the Occupational Safety and Health Act (OSHA) to his management team, and JBS retaliated by suspending him for "falsifying their business records." (ECF No. 1 at 2.) Following an "investigation" into Watts' conduct, JBS terminated his employment. (ECF No. 1 at 3.)

Federal law "prohibits retaliation against employees who engage in statutorily protected activity by opposing an unlawful employment practice or participating in the investigation of one." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). To state a claim of retaliation, Watts needs "to assert only that he was engaged in protected activity and was subject to adverse employment action as a result of that activity." *Gove v. Sargento Foods, Inc.*, 860 F. App'x 446, 448 (7th Cir. 2021), citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013).

Watts cannot bring a claim of retaliation under OSHA, however. Even though OSHA "explicitly prohibits employer discrimination against employees who report violations," the retaliation provision only allows the injured employee to file a complaint with the Secretary of Labor. *See* 29 U.S.C. § 660(c); *Somers v. W. States*

*Envelope & Label Inc.*, No. 26-cv-0058-bhl, 2026 LX 15978, at \*4-5 (E.D. Wis. Feb. 9, 2026) ("Section 660(c) prohibits retaliation against an employee for filing a complaint under OSHA but does not grant the injured employee the right to sue."). It then becomes the Secretary's responsibility to "investigate as he or she deems appropriate; if the Secretary determines that discrimination has occurred, the Secretary will bring an action in any appropriate United States district court against the employer." *Junco v. United Ground Express, Inc.*, No. 24-cv-452-pp, 2024 U.S. Dist. LEXIS 198806, at \*10 (E.D. Wis. Nov. 1, 2024).

Watts does not allege that he actually filed an OSHA violation—rather, he claims he was suspended after bringing potential safety concerns directly to his management team. (ECF No. 1 at 2.) Depending what his specific concerns were, he may have a claim for retaliation under the Food Safety Modernization Act, 21 U.S.C. § 399d. *See* 21 U.S.C.A. § 399d(a) (including complaints made directly to the employer, as well as to the Federal Government, in the list of protected conduct). As his complaint stands now, though, there is no indication that Watts has completed the necessary first step of filing a complaint with the Secretary of Labor. *See* 21 U.S.C. § 399d(b) (explaining the process for someone who believes they were discharged in violation of the Act); *see also* 21 U.S.C. § 399d (4)(A) (allowing a complainant to bring a *de novo* action in federal court if the Department of Labor has not issued a final decision within 210 days of filing the complaint). Nor does Watts put forth allegations that suggest he was retaliated against for some other "protected activity."

Watts further alleges discriminatory conduct and disparate treatment by JBS on the basis of his race. (ECF No. 1 at 3.) Attached to his complaint is a Right to Sue letter from the United States Equal Employment Opportunity Commission (EEOC). (ECF No. 1-1.)

Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation in the workplace on the basis of race, color, religion, sex, national origin, sexual orientation, or gender identity. *Clayton Cty., Georgia*, 140 S.Ct. 1731, 1753 (2020); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013). Title VII also prohibits an employer from retaliating against an employee "on account of [the] employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Nassar*, 570 U.S. at 342.

To succeed on an employment discrimination claim under Title VII, the plaintiff-employee must prove that he:

> [1] is a member of a class protected by the statute, [2] has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class.

*Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). "For any Title VII case alleging racially motivated termination, plaintiff must show he or she was treated less favorably than similarly situated employees and that defendant's intent was discriminatory." *Morgan v. Harris Tr. & Sav. Bank*, 867 F.2d 1023, 1026 (7th Cir. 1989).

Here, Watts alleges he was terminated for "falsifying business records," but that no action was taken against another, non-black coworker who was reported to management for "actually falsifying records." (ECF No. 1 at 3.) His discrimination allegation makes a claim sufficient to survive screening at this stage. *See, e.g., Marigny v. Centene Mhs Wis.*, No. 18-CV-1386, 2018 U.S. Dist. LEXIS 245705, at *5 (E.D. Wis. Oct. 2, 2018) (finding that when "incorporating the Right to Sue letter and construing [Plaintiff's] complaint liberally, it is not frivolous or malicious and that it states a claim.").

### III. Conclusion

For the reasons stated herein, Plaintiff may proceed with his claim of race discrimination. Because Watts has not identified a "statutorily protected activity" that led to his termination, however, his retaliation claim will be **DISMISSED WITHOUT PREJUDICE**. If Watts was attempting to allege claims not identified by the court in this order, he may amend his complaint pursuant to Federal Rule of Civil Procedure 15(a).

**IT IS THEREFORE ORDERED** that the plaintiff shall pay the partial filing fee of $85 not later than April 30, 2026. **Failure to pay the $85 partial filing fee by April 30, 2026, shall result in this matter being dismissed.**

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(2), **after the filing fee is received**, the U.S. Marshals Service shall serve a copy of the complaint, a waiver of service form and/or the summons, and this order upon defendants**.** Even though the plaintiff has been

8

permitted to proceed in forma pauperis in this case, the plaintiff is still responsible for the cost of serving the complaint on the defendants. The plaintiff is advised that Congress requires the Marshals Service to charge for making or attempting to make such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8 per item. The full fee schedule is provided in Revision to United States Marshals Service Fees for Services. 28 C.F.R. § 0.114(a)(2), (a)(3).

**IT IS FURTHER ORDERED** that all of the plaintiff's filings with the court shall be mailed to the following address:

Clerk of Court
Jefferson Court Building
125 S. Jefferson St - Room 102
Green Bay, WI 54301-4541

DO NOT MAIL ANYTHING DIRECTLY TO CHAMBERS. It will only delay the processing of the matter.

The plaintiff should also retain a personal copy of each document.

The plaintiff is further advised that the failure to comply with all deadlines in this matter may have serious consequences, which may include the loss of certain rights or the dismissal of this action.

In addition, the plaintiff must immediately notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 27th day of March, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge